# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LIBERMAN MEDIA GROUP, LLC, | |
| *Plaintiff*, | CIVIL NO. |
| v. | BREACH OF CONTRACT |
| WINTER HORTON, | |
| *Defendant.* | |

## COMPLAINT

Liberman Media Group, LLC ("LMG" or "Plaintiff"), through its undersigned attorneys, files this Complaint for breach of contract against Winter Horton ("Horton" or "Defendant") (collectively, "Parties").

## SUMMARY OF THE ACTION

Plaintiff brings this action for breach of contract against Horton arising from his violations of the *Amended and Restated Limited Liability Company Agreement of Liberman Media Group, LLC* (the "Amended LLC Agreement"). Horton's acts and omissions as LMG's Chief Operating Officer ("COO") constitute gross negligence that caused LMG to lose millions of dollars. Accordingly, LMG seeks to recover no less than $3,000,000.00, plus applicable interest and attorneys' fees.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Complete diversity exists among the Parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial

portion of the events giving rise to these claims occurred in this District.

3. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over LMG's claim arising under Puerto Rico law, as that claim forms part of the same case or controversy.

4. LMG and its members at the time of execution of the Amended LLC Agreement—namely, Mr. Lenard Liberman ("Liberman") and Horton—agreed that the District Court for the District of Puerto Rico shall serve as the exclusive forum for any controversy arising thereunder.

## THE PARTIES

5. LMG is a limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business at 64 Calle José R. Carazo, Guaynabo, Puerto Rico 00969. LMG owns and operates the television network known as TeleOnce. Liberman, a citizen of California, currently serves as LMG's sole member.

6. Horton is a natural person of legal age who, upon information and belief, is a citizen of the state of Rhode Island.

## STATEMENT OF FACTS

7. On July 24, 2020, LMG was incorporated in Puerto Rico as a limited liability company. At that time, Liberman executed LMG's Original LLC Agreement as its sole member.

8. Effective January 1, 2021, Liberman amended and restated LMG's Original LLC Agreement by executing the *Amended and Restated Limited Liability Company Agreement of Liberman Media Group, LLC* (the "Amended LLC Agreement"), which superseded the Original LLC Agreement. Under the Amended LLC Agreement, Horton also became a member of LMG.

9. The Amended LLC Agreement established, *inter alia*, the members' rights and responsibilities and governed their relationships with respect to LMG.

10. The Amended LLC Agreement granted Liberman, as Manager of LMG, authority to appoint individuals as officers-including Chairman, Chief Executive Officer, President, Vice President, Secretary, Chief Financial Officer, and Chief Operating Officer-to act on LMG's behalf and conduct day-to-day management.

11. The Amended LLC Agreement authorized officers to sign contracts and other obligations on LMG's behalf, subject to any restrictions contained in written authorizations issued by LMG's Manager.

12. Pursuant to the Amended LLC Agreement, Liberman served as LMG's Chief Executive Officer, and Horton served as its COO. At all times relevant to this action, Horton, as COO, bore responsibility for overseeing and directing LMG's daily business operations, including implementing corporate policies, signing and enforcing contracts, and paying suppliers. Horton also supervised senior management and departmental heads and managed LMG's operational infrastructure.

13. As COO, Horton held responsibility for making operational decisions on behalf of LMG, including ensuring LMG's compliance with all applicable laws and regulations.

14. Horton possessed direct knowledge of and exercised control over the operational matters at issue in this action. He had both the authority and the duty to prevent, halt, and remedy the wrongful conduct alleged herein.

15. As a seasoned professional with extensive experience in the television industry, Horton possessed full knowledge of his responsibilities as COO.

16. By virtue of his position and the acts and omissions described herein, Horton is liable to LMG pursuant to Section 6.1.2 of the Amended LLC Agreement.

17. On or about November 2, 2020, the Parties entered into the Amended LLC

Agreement.

18. Section 6.1.2 of the Amended LLC Agreement contains a Standard of Care clause providing, in relevant part, as follows:

> No Covered Person[1] will be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud, **gross negligence**, willful misconduct or a material breach of this Agreement by such Covered Person or is not made in knowing violation of the provisions of this Agreement.

19. On August 25, 2025, LMG removed Horton from his position as COO due to significant concerns regarding his performance and conduct, including the following:

   a. Failure to review vendor invoices and cross-check them against underlying agreements prior to approval, resulting in LMG paying nearly $500,000 in erroneous or unnecessary charges and incurring additional legal fees to address the resulting disputes;

   b. Failure to comprehend and act upon fundamental lease terms, including proper notice obligations, exposing LMG to claims of approximately $130,000 in avoidable rent and associated attorneys' fees;

   c. Failure to ensure that the accounting department pursued more than $1,000,000 in collectible rights-related fees, depriving LMG of significant operating capital;

20. Over the following weeks, through November 6, 2025, Liberman and Horton engaged in settlement discussions aimed at resolving known disputes arising from Horton's employment and separation from LMG.

21. On November 7, 2025, LMG discovered that Horton had also failed to renew LMG's multimillion-dollar Station Affiliation Agreement ("SAA") with Univision Network Limited Partnership and UniMás Network (collectively, "UCI").

---

[1] The Amended LLC Agreement defines "Covered Person" to include any member, manager, or officer of LMG. At all relevant times, Horton qualified as a Covered Person under this definition by virtue of his roles as both a member and the COO of LMG..

4

22. The SAA granted LMG, *inter alia*, the exclusive right to retransmit UCI programming in Puerto Rico.

23. By way of example, the SAA granted LMG rights to retransmit high-value programming such as the Latin Grammys, *Premio Lo Nuestro, Premios Juventud*, and major sporting events. Univision programming also filled time slots where producing local programming would have been cost-prohibitive for LMG.

24. The retransmission of these programs and events generated annual revenues for LMG of between $800,000 and $1,000,000.

25. Horton's failure to properly and timely negotiate and renew the SAA constitutes gross negligence because: (a) it resulted in lost annual revenues of no less than $1,000,000.00 from Univision programming; and (b) it compelled LMG to incur costs of no less than $1,000,000.00 to replace the lost programming.

26. Horton's failure to renew the SAA further constitutes gross negligence and/or willful misconduct because it directly created a new competitor in the Puerto Rico television market. UCI owns and operates Channel 7 (WSTE-TV) in Puerto Rico. During the term of the SAA, LMG held the exclusive rights to UCI programming in Puerto Rico, which prevented UCI from broadcasting such programming through its own Channel 7 station. As a direct result of Horton's failure to renew the SAA, UCI now broadcasts through Channel 7 the same high-value programming that LMG previously held exclusive rights to air, including the Latin Grammys, Premio Lo Nuestro, Premios Juventud, and major sporting events. Horton's gross negligence and/or willful misconduct has thus transformed UCI from a programming partner into a direct competitor, causing LMG to lose advertising revenue and market share for years to come.

27. In addition, Horton engaged in gross negligence and willful misconduct by

authorizing and disbursing to himself payments exceeding $390,000.00 without obtaining proper approval from LMG's Manager, in direct violation of Section 6.1.2 of the Amended LLC Agreement.

28. Horton's conduct demonstrates a complete absence of care and such a minimal degree of diligence as to warrant the conclusion that he acted with utter indifference to LMG's interests.

29. As a direct and proximate result of Horton's failure to renew the SAA, LMG has suffered and continues to suffer damages including, but not limited to: (a) lost revenues of no less than $1,000,000.00 from Univision programming; (b) replacement programming costs totaling no less than $1,000,000.00; (c) an amount of no less of $390,000.00 of excessive payments made to Horton and authorized by himself and (d) attorneys' fees and costs incurred in connection with this action.

## CLAIMS FOR RELIEF

### *Firs Cause of Action: Breach of Contract*

30. Plaintiff incorporates by reference paragraphs 1 through 29 as if fully set forth herein.

31. The Parties voluntarily entered into the Amended LLC Agreement to establish their respective rights and responsibilities and to govern their relationship with respect to LMG.

32. The Amended LLC Agreement constitutes a valid and enforceable contract between Plaintiff and Defendant.

33. The Amended LLC Agreement imposes liability upon officers who engage in gross negligence in the performance of their duties.

34. Horton breached the Amended LLC Agreement by violating the Standard of Care

clause set forth in Section 6.1.2 through his gross negligence in performing his duties as COO.

35. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages in an amount to be proven at trial, but believed to exceed $3,000,000.00 annually.

36. Plaintiff is entitled to recover compensatory damages and such other relief as the Court deems just and proper.

*Second Cause of Action: Gross Negligence*

37. Plaintiff repeats, realleges, reiterates and incorporates by reference paragraphs 1 through 35 of this Complaint with the same full force and effect as if fully set forth herein.

38. In breaching the Amended LLC Agreement set forth above, Horton engaged in acts of gross negligence that further imposes liability on him.

39. Horton owed a duty of care to Plaintiff that arose from the Amended LLC Agreement, which created a duty to anticipate and take measures against reasonably foreseeable circumstances and dangers. Horton breached that duty of care.

40. In breaching that duty, Horton engaged a greater failure to exercise care; engaged in at the very least an implied want of the ordinary standard of care. Hortons actions involved more than ordinary inadvertence or inattention but falls short of reckless disregard for consequences.

41. As result of Horton's gross negligence, Plaintiff suffered actual harm, that includes physical, emotional, or economic, as a result of the defendant's grossly negligent conduct.

42. The damages suffered by the Plaintiff , as previously described were causally and proximately caused by Horton's breach of duty.  The damages caused were reasonably foreseeably to Horton and they could have been avoided had Horton not breached his duty of care through his gross negligent conduct.

43. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages in an amount to be proven at trial, but believed to exceed $3,000,000.00 annually.

7

44. Plaintiff is entitled to recover compensatory damages and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Liberman Media Group, LLC respectfully requests that this Court enter judgment in its favor and against Defendant Winter Horton as follows:

A. Awarding Plaintiff compensatory damages in an amount to be determined at trial, but in no event less than $3,000,000.00;

B. Awarding Plaintiff pre-judgment and post-judgment interest at the maximum rate permitted by law;

C. Awarding Plaintiff its reasonable attorneys' fees and costs incurred in this action, as permitted by the Amended LLC Agreement and applicable law; and

D. Granting such other and further relief as the Court deems just, proper, and equitable.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 3rd day of March, 2026.

ESTRELLA, LLC

By: s/Diego Agüeros Jiménez
Diego Agüeros Jiménez, Esq.
USDC-PR Bar No. 229511
E. dagueros@estrellallc.com

s/Kenneth C. Suria
Kenneth C. Suria, Esq.
USDC-PR Bar No. 213302
E. ksuria@estrella.com

P. O. Box 9023596
San Juan, Puerto Rico 00902-3596
T. (787) 977-5050 F. (787) 977-5090

*Counsel for Plaintiff Liberman Media Group, LLC*